## The Illinois Central Railroad Company

*v.*

## Alonzo Cragin, Admr.

| 71 | 177 |
|----|-----|
| 133 | 254 |
| 71 | 177 |
| 41a | 129 |
| 71 | 177 |
| 76a | 625 |
| 71 | 177 |
| 200 | 7463 |
| 200 | 464 |
| 71 | 177 |
| 203 | 6415 |

1. ACTION, *when local—remedy against railroad company for causing death by wrongful act or negligence.* The law creating a right of action against a railroad company for causing the death of a person by wrongful act or negligence, is purely local to the State in which the right is created, although it may be otherwise in cases of actions under the statute against individuals. Corporations being local to the State which creates them, the right of action against them must be local to the same State, and can not be enforced beyond its territorial jurisdiction.

2. ADMINISTRATION—*jurisdiction to grant letters—what constitutes property.* The right of action created by statute in this State in favor of the administrator of a person whose death was caused by the wrongful act or negligence of a railroad company in this State, can not be regarded as property in the State of Iowa, in such sense as to confer jurisdiction in that State to grant letters of administration upon the estate of the deceased.

3. EVIDENCE—*questioning administration collaterally.* Where the court of another State, having jurisdiction to grant letters of administration, entertains an application for that purpose, and letters are issued on its order after having adjudicated thereon, then it may be that determination will be regarded as *res adjudicata*, and beyond the inquiry of any court in a collateral proceeding; but where the transcript in respect to the grant of letters fails to show any such adjudication or that the letters were issued under an order of court, but it appears they were issued by the clerk of the court on his own authority, then the act will be regarded as ministerial and not judicial, and it may be inquired collaterally whether the conditions existed requisite to give jurisdiction to grant the letters.

4. NEGLIGENCE — *contributory and comparative.* In an action by an administrator against a railway company, to recover damages for causing the death of the intestate, evidence tending to show that the deceased was drunk at the time of the accident causing his death, is proper, and it is error to refuse the same, as tending to show negligence on his part.

5. In a suit against a railway company, for causing the death of a party, the court instructed the jury, that if the company was guilty of negligence, and the deceased used ordinary care, or was guilty of slight negligence in comparison with the negligence of the company, and that of the company was gross, then the plaintiff was entitled to recover: *Held,* that the instruction expressed the law accurately.

12—71ST ILL.

6. SAME—*question of fact, and how shown.* The negligence of neither party is required to be established by positive or direct evidence, but may be inferred from circumstances, and so of their care and prudence; and these are questions of fact for the jury, and not for the court.

7. SAME—*instruction as to presumption.* In a suit to recover damages for causing the death of a party, where the question of mutual negligence is involved, and it appears that the deceased was intoxicated at the time, it is not proper to instruct the jury that the fact of the love of life and the natural instinct of self-preservation, possessed by all persons, may be considered in determining whether the deceased used ordinary care, but the same should be qualified, that if the deceased was drunk, the jury should consider that fact, and determine whether it did not rebut the other presumption.

8. SAME—*in reference to speed of train.* In such a case, it is proper for the jury to consider all the circumstances attending the accident, and determine whether, under such circumstances, the train was run at an improper speed in reference to the safety of the deceased, but not in reference to other travelers, unless it was so reckless as to imply a disregard for the safety of others.

9. SAME—*burden of proof.* In a suit against a railway company, to recover damages for a personal injury, it is not sufficient for the plaintiff to prove the injury, but he must also prove the negligence alleged. If it is alleged that a whistle was not sounded, the burden of proving that fact rests upon the plaintiff, and the defendant is not bound to prove that the whistle was sounded.

10. INSTRUCTION—*must be based on evidence.* An instruction based upon a state of facts which there is no evidence tending to prove, should not be given.

APPEAL from the Circuit Court of JoDaviess county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action on the case, by Alonzo Cragin, administrator of the estate of Martin Standwich, deceased, to recover damages for the alleged killing of the deceased by the defendant, the Illinois Central Railroad Company, at Dunleith, Ill., on September 26, 1869.

Martin Standwich, at the time of his death, was a resident of Dunleith, JoDaviess county, Illinois, and had no property in Dubuque county. Iowa, to be administered upon. The pleadings put in issue the representative capacity of the

plaintiff. His letters were granted in Dubuque county, in the State of Iowa. A trial was had, resulting in a verdict and judgment of $1150 in favor of the plaintiff.

Mr. R. H. McClellan, for the appellant.

Mr. Austin Adams, Mr. William Mills, and Mr. David Sheean, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It is first objected to the validity of this judgment, that the circuit court of Dubuque county, Iowa, did not have jurisdiction to grant letters of administration on the estate of Standwich. A plea was filed, denying that plaintiff had legal and valid letters.

The Iowa statute, read in evidence, is as follows:

"The county court has the power to take the probate of wills, to grant administration of the estates of all deceased persons who, at the time of their death, were residents of the county, or who died non-residents of the State, leaving property to be administered upon within the county, or where such property is afterwards brought into the county, and it has jurisdiction in all matters relative to the settlement of such estates."

This jurisdiction was transferred from the county to the circuit courts, by an act of the Iowa legislature, adopted in 1868.

The petition addressed to the court granting the letters, stated that deceased had no property in Dubuque county at the time of his death, unless this claim be regarded as such, nor was such property afterwards taken in the county; and there was also a stipulation to the same effect, and that intestate died in Illinois. It thus appears, that the Iowa court regarded this claim as property, and on that claim granted the letters. Now, was this property, and if it may be so regarded can it be so held in Iowa, as the intestate was killed in Illinois and the railroad is located alone in this State?

The cause of action in such cases depends alone on statutory provisions, and must be limited to the State creating the right, as against its corporations.    At any rate, the suit must be confined to the territorial jurisdiction in which the railroad is situated.    Appellant's road not being located or extending into Iowa, we fail to perceive in what manner deceased, had he not died, or his administrator since, could have any right of recovery in Iowa.    Appellant not being in that State, no suit could, as we suppose, have been maintained there; nor has any law been shown by which the courts of that State could enforce or recognize any such claim.    If they have a similar law to ours, giving damages to the next of kin of persons killed by their railroads, we are not prepared to hold that such a claim could be enforced beyond their territorial limits.    The law creating such a right is purely local to the State in which the right is created when applied to corporations, although it may be otherwise in cases of actions under the statute against individuals.    But corporations being local to the State which creates them, the right of action against them must be local to the same State.    It then follows, that as appellant had no residence in Iowa, there was no cause of action in that State, and if so, there was in no sense property in Dubuque county which could authorize the court in that county to grant these letters.

The transcript of that court fails to show that the application for letters was adjudicated upon and the letters issued under any order thereof.    They appear to have been issued by the clerk of the court, on his own authority.    This being true, the act was ministerial and not judicial,    Had the application appeared to have been made to and entertained by the court, and the letters have been issued on its order after having adjudicated on the application, then it may be that determination would have been *res adjudicata,* and beyond the inquiry of any court in a collateral proceeding; but, the act being ministerial, the authority to inquire into the question whether the officer had legal authority to perform the act, or whether,

in performing it, even if he had the power, he has pursued it. The appellee, then, had no power to obtain letters in Iowa, and the act of granting them being purely ministerial and unauthorized, the right to maintain the suit in this State does not exist under such letters. He should have applied to a court in Iowa which had jurisdiction, or to the proper court in this State.

Inasmuch as various questions have been discussed, and a decision sought on them, we shall proceed to determine them.

It is urged that there was error in excluding a portion of the deposition of Dr. Campbell, the surgeon who was called to deceased upon the occurrence of the accident. The portion excluded is this: "He was already so under the influence of liquor that I gave him no stimulants." This was, under the facts of the case, proper and pertinent evidence, and should have been admitted. Plaintiff had averred in his declaration that deceased was in the exercise of due care, and on the trial it was essential that it should appear that he was exercising such care, or, if not, that his negligence, when compared with that of the company, was slight. Here no one saw deceased until the accident had occurred, and it was material that, as far as possible, the jury should have been informed of his physical and mental condition. If he was so drunk as to be incapable of using reasonable precaution for his safety, he may have been guilty of negligence, and it would only be gross negligence that would render the company liable.

A person who voluntarily uses intoxicating drinks until he has become physically helpless, or his powers so far impaired that he is unable to exert the necessary effort to avoid danger, is guilty of negligence when he places himself in a position of danger; and so when he thus stupifies and deadens his intellectual powers, so that he is unable to foresee and guard against danger. It was, then, highly important for the jury to be possessed of all the facts tending to show his mental and physical condition. Otherwise their conclusions as to whether he exercised reasonable care, might be altogether

erroneous. As the doctor, in the succeeding sentence, says, that deceased smelled so strong of liquor he could hardly stand over him, we should not perhaps reverse for that alone, but the excluded evidence tended strongly to show the extent to which he was under the influence of liquor, more strongly than the evidence as to his smelling of liquor.

We now come to consider the question of whether the evidence sustains the verdict. After a careful examination, we fail to see wherein the company was at fault. It seems to have, if the evidence is to be believed, used all reasonable precautions, or at least appellee has failed to show that the company was guilty of negligence. It is said that it fails to appear that the whistle was sounded at the proper distance from the street-crossing; but it was for appellee to prove that it was not sounded. He had averred negligence, and, to recover, he was bound to prove it. He, by simply proving that deceased was so injured by the train that he died, did not make out a *prima facie* case, and thus shift the burthen of proof on the company to show that they had exercised care. It was for plaintiff, in addition thereto, to have proved that the death was caused by the negligence of the company.

The bell was ringing; a head-light was burning; a watchman met the train at the farther end of the tunnel, and, with a light, went before it through the tunnel, to see that no person or obstruction was on the track. He also went before it, after it emerged from the tunnel, for some distance, and looked down the track, until he could see the crossing, but was unable to discover anything on the track. The engineer and conductor, as well as the watchman, say that, had deceased been standing on or crossing the track, they could have seen him, but that they looked, and did not see him. When the engineer saw the slight elevation of the tender, indicating that it was passing over some substance, he at once got off to see what it was, and, on seeing deceased under the engine, he at once had the train stopped. It was only run-

ning at the rate of three or four miles an hour.   Then, in what does this negligence consist?

Again, on the other hand, deceased was shown to have been of intemperate habits.   He was, on the afternoon previous to the accident, seen sitting on the steps of a saloon not far distant, in a manner that indicated that he was intoxicated.   Several persons testify that, immediately after the accident, his breath smelled of liquor, and the doctor testifies to the same thing.   If this evidence be true, it is hardly probable that he was in a condition to exercise ordinary care. All the evidence considered, we have no doubt that the court below should have granted a new trial.

It is urged that the declaration is defective in averring that defendant had sustained damage, etc.   The use of the word "defendant," instead of "plaintiff," was, no doubt, a matter growing out of the inattention of the pleader, and the error can be corrected by amendment, if desired.

Complaint is made of instructions given for appellee.   We are unable to see any objection to the first, nor is there any specific objection pointed out to it.   The fourth, to which objection is made, informs the jury that, if the company was guilty of negligence, and deceased used ordinary care, or was guilty of slight negligence, in comparison with the negligence of the company, and it was gross, then plaintiff was entitled to recover.   This instruction expresses the law accurately, and it was properly given; but it is said there was no evidence on which to base it.   The jury were required to consider all the evidence before them, and determine whether the company was guilty of negligence and deceased free from negligence, or, if not, whether his was slight and that of the company was gross, before plaintiff could recover. The negligence of neither party is required to be established by positive or direct evidence, but may be inferred from circumstances, and so of their care and prudence; and these are questions for the consideration of the jury, and not of the court.

The sixth instruction, we think, should not have been given. From a careful consideration of the evidence, we fail to see anything tending to show that there was the slightest negligence in stopping the train after it was discovered that deceased was under and being dragged by it. It was calculated to mislead the jury, as they would very naturally infer that the court believed there was evidence tending to prove that the train was not checked up as soon as it should have been after he was found. There is no evidence tending to show that it could have been sooner stopped. Not even the distance the train ran, after he was found to be under it, is proved.

The seventh instruction, no doubt, contains a correct abstract legal proposition, but as there was evidence tending to show that deceased was intoxicated, that fact would impair the force, if it did not overcome the presumption. It is a law of our nature to endeavor to preserve our lives, but the instinct is stronger in some than in others, and observation teaches that a person under the influence of intoxicating drinks is less capable of seeing and avoiding danger, and is more reckless in his conduct and less regardful of his safety. This instruction should have been refused, or modified before it was given, so as to inform the jury that, whilst all persons have the love of life and the instinct of self-preservation, and that this fact might be considered in determining the question of whether deceased used ordinary care, if they believed that he was drunk, they should consider that fact, to determine whether it did not rebut the other presumption.

The tenth instruction is not accurate. It impliedly tells the jury that deceased was crossing Sinsinawa avenue when the accident occurred; and we fail to find any evidence that he was crossing the avenue, or was injured at that place. The instruction says that, in determining whether the train was propelled across the avenue at a proper rate of speed when the accident occurred, they should consider all the circumstances affecting the safety or danger of a traveler at the

crossing. The fair interpretation of this language is, that the traveler referred to was deceased, and that he was traveling across the avenue. This instruction, we think, may have misled the jury. It should have been confined to the place where deceased was first struck, and to his position on the track, if the jury could, from the evidence, ascertain the fact. It was proper for the jury to consider all the circumstances attending the accident, and determine whether, under such circumstances, the train was run at an improper speed, in reference to *his* safety, and not in reference to other travelers, unless it had been so reckless as to imply a disregard for the safety of others; but we see nothing to imply such recklessness.

The judgment of the circuit court is reversed.

*Judgment reversed.*