The South Chicago City Railway Company

*v.*

Antoine Dufresne.

*Opinion filed December 16, 1902—Rehearing denied February 4, 1903.*

1. Street railways—*not actionable negligence to refuse to stop car to take on passenger.* Failure or refusal to stop a car, on signal, to take on a passenger does not give rise to an action for damages for injuries received by such person when attempting to board the moving car.

2. Same—*when evidence tends to prove cause of action.* Refusal to instruct to find for the defendant in an action against a street railway company is justified where the evidence tends to show that the plaintiff was thrown to the ground by a sudden jerk of the car after he had boarded the car and while he was stepping from the run-board to take a seat in the car.

3. Same—*those in charge of car not required to prevent people from committing acts of negligence.* Those in charge of a street car are not required to prevent people from committing acts of negligence in attempting to board cars, when they are moving slowly across railroad tracks or at places other than those set apart to receive or discharge passengers.

4. Same—*when evidence of custom of boarding moving cars is inadmissible.* Evidence that it was customary for people to board street cars as they were moving slowly across railroad tracks at a certain place is not admissible, in the absence of proof that such practice was concurred in by the street car company.

5. Same—*not negligence per se for person to attempt to board moving car.* It is not negligence, as a matter of law, for a person to attempt to board a moving street car, but the question is one of fact, depending on the rate of speed of car and all the circumstances.

6. Same—*when it is not necessary to signal motorman to stop the car.* If a large number of people approach a street car and get on with the knowledge of the conductor and motorman, it is not necessary that one of the last of the number shall signal the motorman or conductor, to manifest his desire to get on.

7. Instructions—*instruction should not attempt to minimize legitimate evidence.* It is not proper for an instruction to inform the jury that even though some material fact may exist, nevertheless it does not follow that the plaintiff has not a good case, and thereby attempt to minimize legitimate evidence or destroy its legal effect.

8. Negligence—*voluntary intoxication does not excuse a person from exercising ordinary care.* Voluntary intoxication will not excuse a

person from exercising such care as may reasonably be expected from one who is sober.

9. APPEALS AND ERRORS—*when objectionable instruction is not harmful.* An instruction objectionable as being open to the construction that the plaintiff, although intoxicated, might recover if he was using such care as a prudent person ordinarily exercises *under the same circumstances,* is not harmful, where the evidence would not justify the jury in finding that the plaintiff was intoxicated.

*South Chicago City Ry. Co.* v. *Dufresne,* 102 Ill. App. 493, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

CHARLES C. GILBERT, for appellant.

CHARLES M. HARDY, WILLIAM H. RICHARDSON, and PLINY B. SMITH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant operates a double-track street railway on Ewing avenue, in South Chicago. Ewing avenue runs north and south, and at its intersection with One Hundredth street the railroad tracks of the Pittsburgh, Ft. Wayne and Chicago, Lake Shore and Michigan Southern, and Baltimore and Ohio Railroad Companies cross the avenue, running from north-west to south-east. The Pittsburgh, Ft. Wayne and Chicago railway tracks are the most southern of the three sets of tracks. There is a hotel, called the "Ewing House," on the south-west corner of Ewing avenue and One Hundredth street, and the usual stopping place for cars going south is opposite this house, just south of the railway tracks. On Sunday, October 27, 1897, an electric motor car of appellant, with a trailer car attached, approached from the north and stopped north of the Baltimore and Ohio tracks. The conductor of the motor car walked forward to the tracks

to see if the way was clear, and upon signals from him and the trailer conductor the cars passed slowly over the tracks. The cars again stopped, and after the same observation by the conductor and signals they crossed the tracks of the Lake Shore and Michigan Southern. They again came to a stop, and after the same signals passed over the Ft. Wayne tracks. Twenty or thirty people had collected at the corner of Ewing avenue and One Hundredth street, in the vicinity of the Ewing House. They were going to a ball game at Hammond, Indiana, and as the cars passed over the Ft. Wayne tracks they hurried to the cars for the purpose of taking passage and climbed on before they came to a stop. The appellee was in the crowd, but was the last, or about the last, of those who attempted to get on. When he reached the cars they were over the railway tracks, or nearly so, and were either running slowly or standing still. In attempting to get on he fell and his hand was run over, resulting in its amputation. He brought this suit in the circuit court of Cook county against appellant for damages, and recovered judgment, which has been affirmed by the Appellate Court for the First District.

At the close of the evidence the defendant moved the court to instruct the jury to return a verdict of not guilty, and this the court refused to do. This refusal is the first alleged error argued by counsel, and it is insisted that the evidence did not tend to prove a cause of action.

There were three counts in the declaration. The supposed negligence alleged in the first count was, that the defendant did not stop the car after the plaintiff had given notice of his intention to take passage, in consequence of which, while he was attempting to take passage, he was thrown to the ground. The second count alleged that defendant brought the car to a partial stop to allow plaintiff to take passage, and while he was attempting to secure a seat on the car increased the speed of the car with a sudden start or jerk, throwing him off.

The third count alleged that the defendant stopped the car, and while plaintiff was attempting to secure a seat started it in a violent and sudden manner, by which he was thrown down. The first count did not state a cause of action for plaintiff's injury. If a refusal to stop cars on notice would give rise to a cause of action, it would necessarily be for damages resulting from the refusal to stop, which might consist of delay or loss of time, but the refusal to stop and accept him as a passenger would not be the proximate cause of the injury alleged. As to the actionable negligence charged in the declaration the evidence was in direct conflict. A considerable number of witnesses who were passengers on the car testified on each side, and directly contradicted each other as to material facts. The plaintiff testified that he jumped on the motor car before it stopped, and the other witnesses called by him either testified that it was moving slowly or that it had stopped. The testimony introduced by plaintiff tended to show that he got safely on the running board toward the front end of the motor car, and worked his way backward to about the center of the car to find a seat, taking hold of the upright supports with his hands and moving along in that way; that when he reached the middle of the car a passenger got up to let him pass through, and as he had one foot on the running board and the other raised to step in the car, there was a sudden and violent start or jerk of the car which threw him off. This evidence tended to prove the cause of action, and the court was right in refusing to instruct the jury, as a matter of law, to return a verdict for defendant.

It is next insisted that the court erred in admitting incompetent and immaterial evidence. On the cross-examination of the motorman and conductor the court allowed plaintiff's counsel to ask them whether it was not customary for people to get upon cars at the crossing of the railway tracks when they were in motion. The street cars were compelled to stop and the conductor

to go forward and see if the way was clear in the case of each set of railway tracks, and upon signals the cars would pass over such tracks. In this process they ran so slowly that persons could get on them if they saw fit, so far as the speed of the cars was concerned. It was not the business of the motorman to keep them off, nor the duty of the conductor. To hold that defendant must prevent people from committing acts of negligence by getting on cars in motion at other than the stopping places would be to make it a guardian and protector of the public and responsible for a failure to prevent acts of negligence. The mere fact that the negligent, heedless or reckless should choose to get on the cars without due regard for their own safety would not change the responsibility of the defendant. It could only be held responsible for its own act of negligence, and to hold that it must prevent negligent acts in others, or assume the same responsibility as it would at a regular stopping place, would be equivalent to abolishing contributory negligence altogether. In the case of *North Chicago Street Railroad Co.* v. *Kaspers*, 186 Ill. 246, the evidence was that passengers frequently got on the train at a certain place when it was moving slowly, and that the conductors encouraged the practice, telling them to come on and aiding them to get on. In that case the railroad company induced the practice, and the continuance of it, by the action of its conductors, and it was held that it became its duty to run the trains in reference to the practice which it recognized and aided. To bring the case within the rule stated there must be some concurrence by the railroad company in the practice, and not a mere failure to prevent acts of negligence or to compel the public to use prudence and caution for their safety. The evidence in this case did not embrace of the facts necessary to bring it within the rule in th *Kaspers case*, and the situation was entirely different. The defendant being compelled to pass over these several

systems of tracks in the manner it did, there could be no inference that the speed was reduced to enable passengers to get on, and the evidence wholly failed to show any concurrence in the custom. · If getting on the cars while crossing the tracks of the steam railroads was negligent, it would, of course, make no difference how many persons were guilty of such acts of negligence, and when it appeared that the defendant was not in any manner responsible for such acts the evidence might have been stricken out.  We are of the opinion, however, that the evidence elicited was not prejudicial to the defendant, since it showed no more than that people got on the cars while in motion and jolting over the tracks of the steam railways, where there was no stopping place and no reasonable man would expect the cars to stop, and the fact was not made the basis of any instruction as to the law.

The court refused to give to the jury instructions numbered 19, 26, 27 and 28, all of which were designed to inform the jury that if the plaintiff attempted to board the motor car while it was in motion, and in doing so missed his footing and fell, they should find for the defendant.  It is not negligence, as a matter of law, for a passenger to get on a street car when it is in motion; but the question is one of fact, depending upon the rate of speed of the car and all the circumstances.  (*North Chicago Street Railroad Co.* v. *Wiswell*, 168 Ill. 613.)  Therefore, the mere fact that the plaintiff attempted to board the motor car while it was in motion would not justify the court in giving such an instruction.  If the attempt of the plaintiff was the sole cause of the accident it would not have been produced by any act of negligence of the defendant, and the defendant could not be held liable if it had done nothing to cause the accident; but the evidence for the plaintiff tended to show that he lost his footing and fell on account of the act of negligence of the defendant in suddenly and violently starting the car.

These instructions entirely ignored that question, and directed the jury to find for the defendant if he (plaintiff) missed his footing, from any cause, while attempting to board the car in motion, which would include the negligence of the defendant alleged in the declaration and which there was evidence tending to prove. It was not error to refuse them.

The court also refused to give instruction numbered 20, requested by the defendant, to the effect that if the plaintiff did not signal the motorman or conductor, and the motorman did not slacken the speed of the cars or bring them to a stop for the purpose of inviting plaintiff to get on, their verdict must be for defendant. The evidence that a large number of people approached the cars and got on with the knowledge of the motorman and conductor was uncontradicted. Plaintiff was the last one to get on, and the motorman and conductor had notice of his intention to board the car. Under these circumstances it was not necessary for him to signal the motorman or conductor to manifest his desire. It was not error to refuse that instruction.

It is urged that instruction No. 12, given at the request of the plaintiff, was erroneous in assuming that the plaintiff was a passenger while attempting to board the car. The instruction required proof that defendant was guilty of the negligence charged in the declaration and in the manner therein alleged, and that plaintiff was exercising ordinary care and caution for his own safety, and if that was so, the verdict would necessarily be for the plaintiff, regardless of an abstract statement which was contained in the instruction as to the duties of carriers and passengers. We do not think it can be said the instruction assumed that the plaintiff was a passenger.

The court wrote and gave to the jury, of its own motion, the following instruction:

"If it be the case that the plaintiff, at the time he was injured, was under the influence of liquor or intoxicated,

nevertheless it does not follow that he cannot recover in this action. Whether he was under the influence of liquor or intoxicated is material only as bearing on the question of whether, in attempting to get on said car, he was, under the circumstances, exercising ordinary care,—that is, such care as prudent persons ordinarily exercise under like circumstances."

. This instruction was objectionable for different reasons. In the first place, it was argumentative in form. Instructions should merely state the law for the guidance of the jury, and not employ the language of counsel in argument. It is not a proper form of instruction to tell a jury that although some material fact may exist, nevertheless it does not follow that the plaintiff has not got a good case, and thereby attempt to minimize or destroy the effect of legitimate evidence. Besides, the conclusion of contributory negligence which would defeat the action might or might not follow from the mere fact of intoxication, depending upon the degree of such intoxication. The evidence of intoxication was admissible as a fact tending to prove negligence on the part of the plaintiff. While voluntary intoxication does not constitute negligence in law, proof of the fact is competent to be considered in determining whether the person was taking that care for his safety which a reasonably prudent man who was sober would take under the same circumstances. As was said in *Illinois Central Railroad Co.* v. *Cragin*, 71 Ill. 177: "Observation teaches that a person under the influence of intoxicating drinks is less capable of seeing and avoiding danger and is more reckless of his conduct and less regardful of his safety." Intoxication in any degree would affect the faculties to some extent, and it may be of such a character that the intoxicated person has practically lost control of his faculties and become unable to exercise the care that would reasonably be expected of a sober person under the same circumstances. If the intoxication was of such a degree,

the jury might properly conclude that it was the sole cause of an accident.

Again, the instruction was objectionable as being open to the construction that plaintiff might recover, though intoxicated, if he was using such care as a prudent person ordinarily exercises under the same circumstances, including the fact of his intoxicated condition. The hypothesis of fact stated in the instruction was, that the plaintiff was under the influence of liquor or intoxicated, and under the instruction that was one of the things attendant upon the event of his losing his footing and falling from the car. The instruction did not require him to use that degree of care which a person of ordinary prudence and caution, in the full possession of his faculties, would exercise,—and that was the degree of care demanded by the law. If the plaintiff, by intoxication, exposed himself to danger and received his injuries for the want of such care as a reasonably prudent person would have exercised if sober, he would be guilty of contributory negligence. Mere intoxication will not relieve a person from the responsibility of avoiding danger in attempting to get on a street car, to the same extent as if he had been sober. The rule is that voluntary intoxication will not excuse a person from such care as may reasonably be expected from one who is sober. (*Toledo, Peoria and Warsaw Railway Co.* v. *Riley,* 47 Ill. 514; *Chicago, Rock Island and Pacific Railroad Co.* v. *Bell,* 70 id. 102; *Illinois Central Railroad Co.* v. *Cragin, supra; Fisher* v. *West Virginia and Pittsburgh Railroad Co.* 42 W. Va. 183 (33 L. R. A. 69); 3 Thompson on Negligence, sec. 2935.) It appears to us, however, that the evidence would not justify the jury in finding that the plaintiff was intoxicated. It was proved that he drank two glasses of beer and that his breath smelled of it, but there were quite a number of witnesses who were with him, waiting for the car, and who had opportunities to know his condition, who testified that he was not intoxicated or under the influence of liquor at

all. In view of all the evidence we do not think the instruction was harmful to the defendant.

No prejudicial error being made manifest, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*