### John Burke v. Chicago and Northwestern R. R. Co.

1. PRACTICE—*No Exception Necessary to the Sustaining of a Demurrer.*—An exception taken to overruling a demurrer is improper, the order being a part of the record by the demurrer, and needs no bill of exceptions to place it there.

2. SAME—*Of What the Record Proper Consists.*—The record proper in a suit at law consists of the process by which the defendant is brought into court, including the sheriff's return, the declaration, pleas, demurrer, if there is any, and any judgment upon demurrer, or other judgment, interlocutory or final.

3. BILL OF EXCEPTIONS—*Office of.*—The office of a bill of exceptions is to preserve that of record, which otherwise would not appear of record.

4. DUE CARE—*Where It Need Not Be Alleged to Recover for the Neg-*

*ligence of Another.*—Where the declaration avers that when defendant's servants deposited plaintiff upon their platform he was wholly incapable of exercising in his own behalf any care whatever, and that this was well known to defendant's servants, and that the plaintiff was injured because they failed to perform the duty they owed him, it states a cause of action without alleging due care on the part of plaintiff.

5. SAME—*Voluntary Intoxication Does Not Excuse Failure to Use.*— Voluntary intoxication will not excuse a person for the failure to use the degree of care reasonably expected of a sober person.

6. COMMON CARRIERS—*Duty Toward Passengers.*—Common carriers are required to do all that human care. vigilance and foresight can reasonably do under the circumstances, and consistently with the mode of conveyance employed, for the safety of their passengers.

7. SAME—*Relation Does Not Cease with the Arrival of the Train at the Passenger's Destination.*—The relation of carrier and passenger does not cease with the arrival of the train at the passenger's destination, but the carrier is required to use the highest degree of care and skill reasonably practicable in providing the passenger a safe passage from the train.

8. SAME—*Owe Extra Care to Passengers Known to be Affected by a Disability.*—If a passenger is known to be in any manner affected by a disability, physically or mentally, whereby the hazards of travel are increased, a degree of attention should be bestowed to his safety beyond that of an ordinary passenger, in proportion to the liability to injury from the want of it.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of McHenry County; the Hon. CHARLES H. DONNELLY, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed April 21, 1903.

V. S. LUMLEY, solicitor for appellant.

The acceptance of a passenger by a common carrier imposes the duty upon the carrier to conduct and care for him safely. Secord v. St. Paul, M. & M. Ry. Co., 18 Fed. Rep. 221.

Common carriers are subjected to responsibility proportioned to the gravity of the trust reposed in them, and are required to exercise the utmost diligence in providing against injuries which can be avoided by human foresight, not only while a passenger is upon their cars but while upon their premises. Philadelphia, W. & B. Ry. Co. v. Anderson, 72 Md. 519; 8 L. R. A. 676 (Md.); C., B. & Q. Ry. Co. v. Mehlsack, 131 Ill. 64; Pittsburg, C. & St. L. Ry.

Co. v. Martin (Superior Ct. Cin.), 3 Ohio Dec. 493, and 2 O. N. P. 353; Dallas & O. C. Ry. Co. v. Reeman, 32 S. W. Rep. 45 (Texas, 1895); Holmes v. Oregon & C. Ry. Co., 5 Fed. Rep. 523; Thomas on Negligence, 451, note 5; Texas & P. Ry. Co. v. Dick, 63 S. W. Rep. 895; Gaynor v. Old Colony & N. Ry. Co., 100 Mass. 208.

A common carrier that knowingly accepts a passenger in such a mental or physical condition that he is incapable of exercising proper care for himself is required to use such care toward such passenger as his condition requires. St. L., A. & T. H. R. R. Co. v. Carr, 47 Ill. App. 353, 358–9; Fisher v. W. Va. & P. R. R. Co., 39 W. Va. 366 (23 L. R. A. 758); American Negligence Cases, Vol. 10, 440; Bohannon's Adm'x, v. Southern Ry. Co., 65 S. W. Rep. 169 (Ky.); Croom v. C., M. & St. P. Ry. Co., 52 Minn. 296 (18 L. R. A. 602); Thompson on Carriers of Passengers, pp. 270, 271, Sec. 5; Bishop, Non-contract Law, Sec. 513; Shearman & Redfield on Negligence, Vol. 1, Sec. 99 (4th Ed.).

Drunkenness is not *per se* contributory negligence. Milliman v. N. Y. C. & H. R. R. Co., 4 Hun, 409 (66 N. Y. 642); Pierce on Railroads, 331, notes 5 and 6; Wood on Railroads, Vol. 2, 1457.

A common carrier is required to exercise ordinary care after discovering an intoxicated person on its track or premises and in a place of danger, and can not indulge in the presumption that such a person would take care of himself. Chicago W. Div. Ry. Co. v. Ryan, 131 Ill. 478; Pierce on Railroads, 331, notes 5 and 6; H. & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; I. & G. N. Ry. Co. v. Gilbert, 64 Texas, 536.

D. T. Smiley, attorney for appellee.

The self-inflicted disability of intoxication will not excuse the wayfarer from the exercise of such care as is due from a sober man. Fisher v. W. V. & P. R. R. Co., 42 W. Va. 183; Am. Neg. Cases, Vol. 10, p. 459.

Mr. Justice Dibell delivered the opinion of the court.

This was an action on the case brought by Burke against

the railway company to recover damages for personal injuries alleged to have been sustained by him by reason of the negligence of defendant's servants. Plaintiff filed a declaration and defendant demurred thereto. The court sustained the demurrer and plaintiff elected to stand by his declaration. Judgment for costs was thereupon entered in favor of defendant. Plaintiff appeals. Defendant has entered its motion here to affirm the judgment because no bill of exceptions was taken, and because exceptions by plaintiff to the order of the court sustaining the demurrer, and to the judgment, are not preserved by a bill of exceptions, but only by recitals of the clerk in the record. This motion was taken with the case, and must first be decided.

In Hawk v. McCullough, 21 Ill. 220, a demurrer to the declaration was sustained; plaintiff excepted and abided by his declaration; the trial court gave judgment for costs against plaintiff, and plaintiff sued out a writ of error. The Supreme Court said:

" We take occasion to repeat here that an exception taken to overruling a demurrer is improper, for the point saves itself; it is a part of the record by the demurrer, and needs no bill of exceptions to place it there."

The judgment was reversed because of error in sustaining the demurrer. In Hamlin v. Reynolds, 22 Ill. 207, where the action of the trial court in sustaining a demurrer to certain pleas was assigned for error, the court said:

" It is believed that no reported case can be found, either in Great Britain or in this country, in which it has been held that it is necessary to except to the judgment on a demurrer to enable a party to have the decision reviewed in an Appellate Court. * * * The judgment on the demurrer is as much a part of the record as any other judgment that is rendered by the court in the cause. The office of a bill of exceptions is to preserve that of record which otherwise would not appear of record. By the practice of courts of common law jurisdiction, the evidence in a cause, the decisions of the court in admitting or rejecting evidence, affidavits on motions and the reasons upon which such motions are made, the giving and refusing instructions, and various other matters, do not appear of

record, and are no part of it, unless embodied in a bill of exceptions, and by that means made a part of the record in the case. In the decision of all such questions the judgment of the court is not usually spread upon the roll of its proceedings, while judgments by default, on demurrer, in case of non suit, final judgment on verdict, etc., have, by the practice at all periods, been so entered and regarded as a part of the record. It would be improper practice to embody a judgment on a demurrer in a bill of exceptions, as it would uselessly incumber the record and unnecessarily add to the expense of litigation. The position that the judgment on the demurrer to the second and third pleas in this case was not excepted to in the court below, is wholly untenable."

The court held there was error in sustaining the demurrer to one of the pleas. In Chase v. DeWolf, 69 Ill. 47, the trial court sustained a demurrer to defendant's return to a petition for mandamus. The Supreme Court rebuked appellant for preserving the action of the court below by bill of exceptions, holding it useless and contrary to correct practice, and said:

" The petition, the return, the demurrer, and all orders of the court thereon, were matters of record, and acquired no additional force by being embodied in what is called a bill of exceptions."

In Zimmerman v. Cowan, 107 Ill. 631, the trial court sustained a plea in bar to a petition to contest an election, and dismissed the petition. There was no bill of exceptions. It was held no bill of exceptions was necessary to enable the Supreme Court to review the action of the trial court. The plea was held bad and the judgment was reversed. In VanCott v. Sprague, 5 Ill. App. 99, the court, by McAllister, J., said:

" The record proper in a suit at law consists of the process by which the defendant is brought into court, including the sheriff's return, the declaration, pleas, demurrer, if there is any, also any judgment upon demurrer, or other judgment, interlocutory or final; so that if judgment be given upon demurrer, overruling or sustaining it, and is not waived by pleading over or upon default—and in the former case the demurrer is improperly overruled or sus-

tained, or in the latter the service is not in time—or the declaration fails to set out a cause of action, or the judgment is unauthorized by law, the party prejudiced may, on appeal or writ of error, assign error in the Appellate Court without any exceptions, or, having a bill of exceptions, because the errors arise upon the record proper."

In Martin v. Foulke, 114 Ill. 206, rulings which relate to the pleadings, or appear on the face of the judgment itself, are expressly excepted from the requirement that they be presented by bill of exceptions. In Helmuth v. Bell, 150 Ill. 263, there was no bill of exceptions, but the court held the question was presented whether the declaration was sufficient to sustain the judgment. In Allen v. Haley, 169 Ill. 532, the ruling of the trial court upon demurrer to a plea was reviewed without a bill of exceptions. (Randolph v. Emerick, 13 Ill. 344; VanDusen v. Pomeroy, 24 Ill. 289; McChesney v. City of Chicago, 151 Ill. 307; Atkins v. L. T. Co., 79 Ill. App. 19; Whalen v. Muma, 94 Ill. App. 488.) None of the cases relied upon by defendant in support of its motion involved the ruling of the trial court upon the pleadings. We are of opinion no bill of exceptions was required in this cause. The motion to affirm for want of a bill of exceptions, is therefore denied.

Each of the two counts of the declaration are lengthy, and very full in all details. The substance of the first count, material to the present inquiry, is that on the day of the injury plaintiff was at the village of Union in McHenry county, and had already become and was so intoxicated that he was helpless and unable to move about from place to place, and was so befogged in his mind and intellect as not to have and be able to form any intelligent purpose, or to act in an intelligent manner, in anything whatsoever; that while plaintiff was in that helpless condition, the marshal of said village pushed, pulled and carried plaintiff to defendant's railway station in said village and bought of defendant a passenger's ticket from Union to Marengo in said county, and paid defendant the regular price therefor, and placed plaintiff in a passenger car on a train of defendant then at Union, and delivered plaintiff into the care,

custody and charge of the conductor and crew of said train, and delivered the ticket to the conductor, and defendant accepted plaintiff upon its train and car, and took the ticket; that while being carried from Union to Marengo plaintiff remained and continued in said condition and was in that condition when the train arrived at Marengo; that upon the arrival of said train at Marengo, defendant's servants took plaintiff, then in a helpless condition and wholly incapable of exercising in his own behalf any care whatever, and pulled, dragged and carried plaintiff onto a certain platform and walk of defendant, and carelessly and negligently deposited and left plaintiff on said walk and platform; that said walk and platform was between a track on the north side of defendant's depot upon which said train was then standing, and a certain other track on the south side of said depot and along and upon said platform; that in order for plaintiff to get off said platform and defendant's depot grounds it was necessary for him to cross the north or south track; that, upon the south track defendant was accustomed to and was then about to switch a car or cars by taking the same from said track on the north side of said depot, and transferring them to the track along the south side of the depot; that the south track ran close to the platform and walk at the west end of the depot and along the south side thereof; that said walk afforded the only way for persons to pass from said depot to the public street; that said walk extended west from where plaintiff was so left about ten rods to the street; that it had been and was the custom of persons going to and from said depot to cross said track and go southwesterly across the depot grounds to the public street across the tracks and grounds owned and controlled by defendant, which custom of persons to pass along said walk and platform near said south track and to cross the same in a southwesterly direction to reach the street was well known to defendant. The court further alleged that when defendant took plaintiff from the train, it became its duty, either to put plaintiff in a place of safety, or to deliver him in charge of some per-

son who would see that in attempting to go from said station to the public highway or off said depot grounds, he did not get upon or across or near said south track while defendant was so switching its cars; that it was defendant's duty to have caused plaintiff to be conducted into its depot or away from the same to a place of safety and in a safe manner, and in his then helpless condition to have assisted him from said station and depot grounds without his being hurt or injured by means of the switching of said cars; that defendant did not regard its duty or use due care in that behalf, but on the arrival of said train, while plaintiff was helpless, and irresponsible, negligently placed plaintiff on said platform and walk near the west end of the depot, and without having taken him to a place of safety, and without watching him to see that he did not wander close to or upon said south track, negligently detached a car or cars from said train standing on said north track, and without regard for plaintiff's safety, transferred and switched it upon and along said south track, near which plaintiff was permitted by defendant to wander in his helpless condition, uncared for and unattended; that while plaintiff, in said helpless and irresponsible condition, was working his way along said south platform toward the street, and while defendant was negligently switching its cars along said south track, plaintiff, without knowing what he was doing, and without being able to control his actions and exercise his mind, in some manner projected part of his body over the north side of the south track, so that said car, in being switched and backed along said south track, struck plaintiff upon his side and arm, and threw him with great force against said platform, with his right hand across and upon the north rail of said south track, and the fingers of his right hand were cut off, his shoulder, head and arm bruised and cut, etc. It was repeatedly averred that plaintiff's helpless condition was well and fully known to defendant and its servants, and these averments cover all the time from his being carried on the train till the injury. The second count contained

like allegations, and also averred that said south track extended westerly from the west end of the depot till it intersected the main track, three or four rods west of the west side of the public street there; that from said point of intersection to within five rods of the depot said south track was laid on a curve, and improperly and negligently so constructed that when a car passed along said south track it would project over said walk and platform, which was the only way provided by defendant for persons to pass from said depot to the street; and that the steps and platform of defendant's car so being switched projected over the said line of said walk and struck plaintiff and caused his injury.

The declaration contains no allegation that plaintiff was in the exercise of due care for his own safety at the time of the injury. It has been laid down as a general rule in decisions too numerous to require or permit citation that in a declaration in a suit to recover damages alleged to have been caused to plaintiff by defendant's negligence such an allegation of the exercise of due care by plaintiff is essential. It is averred that plaintiff was intoxicated. It is a just inference from the declaration that if plaintiff had not been intoxicated he would not have been injured; or, in other words, that if he had used such care for his own safety as may reasonably be expected from one who is sober he would not have been injured. It is a general rule that voluntary intoxication will not excuse a person for the failure to use the degree of care reasonably expected of a sober person. (South Chicago City Railway Co. v. Dufresne, 200 Ill. 456, and cases there cited; Fisher v. W. V. & P. R. R. Co., 39 W. Va. 366; 23 L. R. A. 758.) In Smith v. Norfolk & Southern R. Co., 114 N. C. 728, 25 L. R. A. 287, is found the following discussion and citation of authorities in illustration and support of the rule just stated :

" We are also of the opinion that there was error in ignoring that universally established principle in the law of contributory negligence which imposes upon one who has voluntarily disabled himself by reason of intoxication the same degree of care and prudence which is required of

a sober person. This is so well established that it would seem unnecessary to cite authority in its support, but, as it appears to be questioned, we will reproduce a few extracts from some of the text books, which are substantially repeated by every writer upon the subject. Mr. Wood, in his work on Railways (Vol. 2, Sec. 1457), after stating that one can not voluntarily incapacitate himself from liability to exercise ordinary care, and then set up such incapacity as an excuse for his negligence, remarks: 'The rule, therefore, is, that the same care is required of a person when he is intoxicated as when he is sober; though if the defendant is aware of his state before the injury, it is bound to exercise greater care to avoid inflicting any injury upon him.' In Patterson's Railway Accident Law (p. 74) it is said: 'The fact that the person injured was intoxicated at the time of the injury will not relieve him from the legal consequences of his contributory negligence.' In Bishop's Non-contract Law (p. 513) it is said: 'Contributory negligence is the product of a general ill condition of the mind, and not of a specific intent. Therefore, on principle, drunkenness does not excuse it; and so also are the authorities.' In Thompson on Negligence (Vol. 1, p. 430) the author remarks: 'Nor will the self-inflicted disability of drunkenness excuse the wayfarer from the exercise of such care as is due from a sober man.' In Shearman & Redfield on Negligence (Vol. 1, p. 93) it is said, in effect, that, if the intoxication is such that it prevented the injured person from taking ordinary care to avoid the injury, he can not recover. See also Pearce on Railroads, 295; Whittaker's Smith on Negligence, 403, note; 4 Am. & Eng. Ency. of Law, 79. In Beach on Contributory Negligence (p. 403) it is said: 'Drunkenness is a wholly self-imposed disability, and, in consequence, is not to be regarded with that kindness and indulgence which we instinctively concede to blindness or deafness, or any other physical infirmity. * * * Disabilities, moreover, of any kind, are to be a shield, and never a sword. It would be a strange rule of law that regarded a certain course of conduct negligent and blameworthy upon the part of a sober man, but that held the same conduct, on the part of the same man when intoxicated, venial and excusable. Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication *cum periculis.*' "

While the general rules of law are as above stated, we hold that the averments of this declaration present a case which constitutes an exception thereto. Plaintiff was a passenger on defendant's train. His helpless condition was known to defendant's conductor and servants in charge of said train, and who were about to do and who did do the switching described. Plaintiff was deposited on a platform between two tracks. Common carriers are required to do all that human care, vigilance and foresight can reasonably do under the circumstances and consistently with the mode of conveyance employed, for the safety of their passengers. (North Chicago Street Railroad Co. v. Cook, 145 Ill. 551; Chicago & Alton R. R. Co. v. Byrum, 153 Ill. 131; West Chicago Street R. R. Co. v. Kromshinsky, 185 Ill. 92.) The relation of carrier and passenger does not cease with the arrival of the train at the passenger's destination, but the carrier is required to use the highest degree of care and skill reasonably practicable in providing the passenger a safe passage from the train. (Penna. Co. v. McCaffrey, 173 Ill. 169.) In P. W. & B. R. Co. v. Anderson, 72 Md. 519, 8 L. R. A. 673, the court said carriers of passengers " are bound to use the utmost degree of care, skill and diligence in everything that concerns the safety of passengers; nor are their duties limited to the mere transportation of them. They are bound to provide safe and convenient modes of access to their trains and of departure from them." In Gaynor v. Old Colony & N. R. Co., 100 Mass. 208, the court said :

" The plaintiff was a passenger, and while that relation existed the defendants were bound to exercise toward him the utmost care and diligence in providing against those injuries which can be avoided by human foresight. He was entitled to this protection so long as he conformed to the reasonable regulations of the company, not only while in the cars but while upon the premises of the defendants; and this requires of the defendants due regard for the safety of the passengers as well in the location, construction and arrangement of their station buildings, platforms and means of egress, as in their previous transportation."

In view of the plaintiff's helpless condition and inability

to exercise his mental faculties for his own care alleged in
the declaration, and of the knowledge of the defendant's
servants of his condition, and of the fact that they were
about to switch cars on the very track along which plaint-
iff must pass if he attempted to reach the street by the only
route provided by defendant, and over which walk and
platform its cars, while being switched, would project,
defendant and its servants owed plaintiff a further duty,
the discharge of which would have prevented the injury,
and the failure to discharge which duty ought not to be
excused by the fact that his helpless and unintelligent con-
dition was due to intoxication.   In Thompson on Carriers
of Passengers, 270, it is said:

"It is consistent not only with common humanity, but
with the legal obligations of the carrier, that if a passenger
is known to be in any manner affected by a disability,
physically or mentally, whereby the hazards of travel are
increased, a degree of attention should be bestowed to his
safety beyond that of an ordinary passenger in proportion
to the liability to injury from the want of it.   *   *   *
The fact that a passenger is intoxicated does not absolve
the carrier from the duty of exercising the same care for
his safety as for that of other passengers, although this cir-
cumstance may be shown as indicating contributory negli-
gence in case of injury received by him.   Indeed, it is
properly held that it is the duty of the carrier's servants
under such circumstances, when aware of the intoxication
of the passenger, to give him that degree of attention
which considerations for his safety demand beyond that
ordinarily bestowed upon passengers."

In Croom v. C., M. & St. P. R. Co., 52 Minn. 296, 18
L. R. A. 602, the court said:

"If the company voluntarily accepts a person as a pas-
senger, without an attendant, whose inability to care for
himself is apparent or made known to its servants, and ren-
ders special care and assistance necessary, the company is
negligent if such assistance is not afforded.   In such a case
it must exercise the degree of care commensurate with the
responsibility which it has thus voluntarily assumed, and
that care must be such as is reasonably necessary to insure
the safety of the passenger in view of his mental and phys-
ical condition.   This is a duty required by law, as well as
the dictates of humanity."

In A., T. & S. F. R. Co. v. Weber, 33 Kan. 543, a passenger became ill and was in a helpless and insensible condition before reaching Hutchinson, at which station the company's servants removed the passenger from the train and left him on the platform, where he suffered from the cold and inclemency of the weather; and it was claimed it was by reason of such neglect he died. The company claimed that he was suffering from the effects of intoxicating drink. The court held that his condition was such that he was properly removed from the train, and then further said :

"The duty of the railroad company, however, with respect to Weber did not end with his removal from the train. He was unconscious and unable to take care of himself. The company could not leave him upon the platform, helpless, exposed, and without care and attention. It was its duty to exercise reasonable care and diligence to make temporary provision for his protection and comfort. As was said by the learned court who tried the cause, ' of course the carrier is not required to keep hospitals or nurses for sick or insane passengers, but when a passenger is found by the carrier to be in such a helpless condition, it is the duty of the carrier to exercise the reasonable and necessary offices of humanity toward him until some suitable provision can be made.' * * * We think if the railway company carefully and prudently removed him from the train, and promptly placed him in the care of the overseer of the poor, who received him and took charge of him, that under the facts of this case it has exercised that reasonable care and diligence in making provision for him that the law requires."

In the Illinois cases referred to in South Chicago City Ry. Co. v. Dufresne, *supra*, the person injured was not a passenger, and in the Dufresne case the person injured had placed himself in a position of danger before or at the time of becoming a passenger. Here, plaintiff was not seeking to become a passenger on defendant's train. We hold the rule stated ought not to be applied to this case, where the plaintiff was forcibly placed upon the train in a drunken and insensible condition by an officer of the law, and was received in that condition by the defendant for transpor-

tation, and was,. by defendant's servants, deposited in a place which was unsafe to one insensible and unable to care for himself. Having accepted plaintiff as a passenger, when defendant's servants were aware of the fact that he was incapable of taking any care for his own safety, we are of opinion they were bound to put him in some place of safety after removing him by force from the train, and that they had not completed the duty they owed to plaintiff when they deposited him upon a platform between two railroad tracks, one of which he must cross in leaving the railroad grounds, and over both of which tracks said servants were about to move cars from said train. We also hold that under the special circumstances alleged in the declaration plaintiff was not required to aver that he exercised a care for his own personal safety which defendant's servants knew he was incapable of exercising when they received him as a passenger. The declaration averred that when defendant's servants deposited plaintiff upon the platform he was " wholly incapable of exercising in his own behalf any care whatever," and that this was well known to defendant's servants. Because he was defendant's passenger and was incapable of exercising any care for his own safety, and defendant's servants knew it, they owed him a special duty. According to the declaration he was injured because they failed to perform that duty. We are of opinion the declaration stated a cause of action.

The judgment is therefore reversed and the cause remanded.