# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE TOLEDO, PEORIA AND WESTERN RAILWAY COMPANY

*v.*

JESSE HAMMETT.

*Opinion filed February 21, 1906.*

1. TRIAL—*when refusal to direct a verdict is proper.* Refusal to direct a verdict for a railroad company in an action for personal injuries is proper, where there is evidence tending to show that the plaintiff was crossing the railroad tracks in a street, which was the usual and best way of reaching his post of duty as crossing flagman; that he was struck by a backing engine and car; that no whistle or bell was sounded; that no one was on the rear of the car, and that plaintiff, before stepping on the tracks, had noticed the car standing still but did not see that an engine was attached.

2. SAME—*what questions are for the jury.* Whether the plaintiff's hearing was so defective that he could not have heard the whistle or bell had one been sounded, whether he was negligent in failing to look and listen, and whether the omission contributed to his injury, are questions of fact for the jury, where there is evidence tending to show that no bell or whistle was sounded and that plaintiff looked before or at the time he started to cross the tracks.

3. NEGLIGENCE—*deaf person must be vigilant in the use of his other senses.* One whose sense of sight or hearing is defective must, when placing himself in a position requiring the exercise of care for his own safety, be more vigilant in the use of his other senses, and his infirmity does not excuse him from exercising the same degree of care that an ordinarily prudent person in the possession of his natural faculties would have exercised under the circumstances.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

This was an action on the case, brought in the circuit court of Peoria county by appellee to recover damages from appellant for injuries received while crossing appellant's tracks at a street crossing in the city of Peoria. The cause was tried by a jury and a verdict was rendered for $1593.50, upon which judgment was rendered. On appeal to the Appellate Court the judgment of the trial court was affirmed, and a further appeal is prosecuted to this court to review the record and judgment of the Appellate Court.

STEVENS & HORTON, for appellant.

JOSEPH A. WEIL, and FRANK J. QUINN, (I. J. LEVINSON, of counsel,) for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The facts, briefly, as they appear from the record, disclose that appellee was employed as a watchman and stationed at the crossing of the appellant company's railroad at the intersection of Water and Walnut streets, in the city of Peoria. Water street runs parallel with appellant's railroad and Walnut street crosses it at right angles. Appellee held his position by appointment of the mayor of the city but was paid by the railroad company, and had been employed in the same capacity for about four years at the time of the injury complained of. On the morning of April 16, 1903, while on his way to work, he sought to pass over the crossing of said streets and said railroad in order to reach the "watchman's shanty," which was his post of duty. There are six tracks laid in Water street, running parallel, in a northerly and southerly direction. He approached from the west, crossed

over track No. 1 and proceeded in a southerly direction in the space between the first and second tracks. An engine attached to a pay-car on the second track, being the track next to the one he had just crossed over, had moved up north of Walnut street a few minutes previous to the appearance of appellee, stopped, and after receiving orders began backing. The pay-car being next to appellee, the steps or some projecting portion of the car struck him and inflicted the injuries complained of. Appellee was eighty-two years of age and hard of hearing, and upon the morning in question had his ears muffed to keep out the cold. There is a conflict in the evidence as to whether or not the bell was rung or a whistle blown before the engine of the pay-car reached the crossing, and also whether appellee looked to see whether a train was approaching or whether there was any danger.

It is first insisted that the peremptory instruction asked should have been given and a verdict directed for the defendant. The preponderance of the evidence is not before us, but the only question presented upon the refusal of the trial court to direct a verdict is whether or not there is any evidence in the record fairly tending to support the allegations as set out in the declaration. Appellee was not a trespasser, as this was his usual and best way to reach his post of duty. There is evidence in the record at least fairly tending to show that no bell was rung or whistle blown for the crossing. Some three or four witnesses besides appellee, who saw the accident, testified that they did not hear either the bell or whistle. And as to the question of diligence used by appellee, he testified that he saw cars on the track, and among them the car that struck him, which stood on the second track, but did not notice an engine attached to it. There were box-cars standing on the first track just north of the crossing, which, of course, made it more difficult to see an engine located as this one was at the time appellee attempted to cross the track. No one was on the back of the pay-car to warn people of danger, and while the conductor claimed to have been on the

back end of the car as it moved up, and had gotten off and walked back and was standing south of the pay-car next to the crossing, where he would be in as good or better position to warn people of danger, still we think it was a question of fact for the jury to determine, from all the circumstances in the case, whether or not appellee was negligent to such a degree as would preclude him from recovering, there being evidence at least fairly tending to prove that no bell was rung or whistle blown, and that appellee looked, before or at the time of his crossing the street, to determine whether there was any danger. Whether appellee's hearing was so defective that he could not have heard the bell or whistle if either had been sounded, or whether he was negligent in failing to look and listen, as it is argued he failed to do, and whether the omission contributed to his injury, were all questions of fact for the jury. This court has long since refused to hold that the failure to look and listen for approaching trains is negligence as a matter of law, but holds that it is a question of fact to be taken into consideration with all the other surrounding facts and circumstances in the case. We do not feel warranted in holding that there is no evidence that fairly tends to show care on the part of appellee, or that appellee was, as a matter of law, guilty of contributory negligence.

It is next insisted that the trial court erred in refusing to give the first instruction asked in behalf of appellant. The instruction reads as follows:

1. "You are instructed that wherever, in any of the instructions, you are told that Jesse Hammett was bound to exercise due care for his own safety, it is meant that the law required him to exercise the degree of care that a reasonably prudent person in possession of the ordinary senses and capacities would have exercised under the facts and circumstances in evidence. If you believe he was old or hard of hearing, yet that did not excuse him from the duty to exercise the full degree of care, as above explained."

As this and the third instruction, as modified and given in behalf of appellant, pertained to the same facts and conditions, they will be discussed together. Instruction No. 3 offered by appellant read as follows:

3. "You are instructed that if you believe the plaintiff was old or his hearing defective, yet that would not excuse him from the obligation to exercise due care. He was bound to exercise that degree of care that an ordinarily prudent person would have exercised under the circumstances shown in evidence, and the law is that any defect in hearing not only did not excuse him from the exercise of care, but it required of him the greater use of his other senses to discover whether a car was approaching. If he failed to exercise such care then he cannot recover and your verdict should be not guilty."

And as modified and given it reads as follows:

3. "You are instructed that if you believe the plaintiff was old or his hearing defective, yet that would not excuse him from the obligation to exercise due care. He was bound to exercise that degree of care that an ordinarily prudent person *whose hearing was so defective should* have exercised under the circumstances shown in evidence."

It will be seen the modification was by striking out the last half of the instruction and adding to it the words, "whose hearing was so defective should." This modification we think was error. The degree or kind of care required to be used must be the same in the case of all adult persons in possession of their natural faculties,—that is, that it shall be reasonable and ordinary care. It cannot rest upon a sliding scale, depending upon the acuteness of or defects in the senses of sight, hearing or feeling. When one places himself in a position requiring the exercise of care for his own safety, and is conscious that one of the senses designed by nature for his protection is dulled by age, disease or from other cause, he must be more vigilant in the use of the remaining senses to supply the defect and protect himself. With and in view of

his infirmity he must use due and reasonable care for his own safety. *South Chicago City Railway Co.* v. *Dufresne,* 200 Ill. 456; *Sims* v. *South Carolina Railway Co.* 27 S. C. 268; 3 S. E. Rep. 101; *Candee* v. *K. C. & I. R. R. Co.* 130 Mo. 142; 31 S. W. Rep. 1029; *Fenneman* v. *Holdom,* 75 Md. 1; *Harris* v. *Uebelhoer,* 75 N. Y. 169.

In *Sims* v. *South Carolina Railway Co. supra,* it is said: "Where the rights and obligations of one party are made to turn upon the proper caution of another, it would seem that there should be some common standard by which to test the fact, and we know of none more practicable other than that of a prudent and reasonable man in the possession of the ordinary senses and capacities."

In *Candee* v. *K. C. & I. R. R. Co. supra,* it is said: "The plaintiff saw fit, of his own motion, to introduce evidence tending to show his physical infirmities, both in hearing and seeing. At first blush it might have appeared to the jury that these physical defects excused his failure to exercise ordinary care and prudence, but most clearly the law regards his conduct, under the circumstances, in a different light. On the one hand, in the absence of knowledge of these defects in his hearing and sight the trainmen had the right to suppose that neither his vision nor his hearing was impaired (citing cases) ; but on the other hand, being conscious of his defective sense of hearing, so far as excusing his negligence in going between the rails of a railroad track and walking there, he was bound to exercise greater vigilance in looking for trains; and in this case that is peculiarly true, because the plaintiff testified he was an old railroad man, and hence fully understood the danger of walking on the rails."

Sight and hearing are the senses most relied upon in situations of danger. The loss of either does not warrant the unfortunate victim in assuming that the affairs and business of the community must be regulated and conducted with a special regard for his condition, but upon him falls the additional burden. To hold otherwise would be to cast upon so-

ciety and business the burdens, or a material part thereof, of the misfortunes of the individual. Certainly it could not be held, as a matter of law, that the railroad company, or its servants, knew of such infirmity, and the evidence shows that those in charge of the train that struck him did not know of it, and unless they did know of it they should not be required to use any more care for the safety of a person under those conditions than they would for any other adult person. No one knew of his condition better than himself, and it was his duty to take into consideration his defective hearing and protect himself accordingly. It is not denied but that his eyesight was good. It was therefore his duty to be more careful than a person that was not so afflicted. He knew and understood the dangers surrounding the place where he was injured, as he had been stationed there for four years for the very purpose of warning people of dangers such as the one that caused his injuries.

Appellant's first refused instruction and the third instruction as offered, together stated the law applicable to the case correctly. Without giving the first or some similar instruction, the third, as modified and given, was likely to mislead the jury, and justify it in the conclusion that a deaf person is not required to hear, because that is impossible, and that to the extent of the deafness the degree of care required of such person is lessened. If the first instruction had been given it would have explained, and possibly cured, the third as modified. We think the refusal of the court to give the first instruction and the action of the court in modifying the third instruction were such errors as require a reversal of the case. The evidence was close and the issues were sharply drawn, and in such case the jury should have been properly instructed.

It is next insisted that the court erred in giving the first instruction in behalf of appellee. This instruction informed the jury that if appellant, Hammett, while in the exercise of ordinary care "as defined in these instructions," was injured

by and in consequence of the negligence of the defendant as charged in the declaration or in either count thereof, then they should find the defendant guilty. The words above quoted are the words complained of in the instruction, and under ordinary circumstances could not be held to be error; but referring, as the jury would undoubtedly infer the words do, to the third instruction of appellant as modified, and finding, as we do, that the modification of that instruction was error, it necessarily follows that under the conditions here (the words referring specifically to a bad instruction) it was error to give the same.

Other instructions are complained of, but upon a careful investigation we are of the opinion that the instructions complained of, aside from those above considered, substantially state the law applicable to the case.

For the reasons above stated the judgment of the Appellate Court is reversed and the cause remanded to the circuit court of Peoria county.     *Reversed and remanded.*