ANNA M. DEANE v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

Division One, January 16, 1906.

1. **NEGLIGENCE: Wantonness.** Where there is no evidence of
wantonness or willfulness on the part of the operatives of the
car that struck a pedestrian attempting to cross the track at
a street crossing, there is no room for the application of the
humanitarian doctrine to the case.

2. ————: **Speed of Cars.** If plaintiff's own evidence logically de-
monstrates that a street car was not being run faster than
twelve miles an hour, it cannot be said that the testimony of
one of her witnesses that it was being run twenty-five miles
an hour is any substantial evidence that it was being run in
excess of fifteen miles an hour —the maximum rate permitted
by ordinance.

3. ————: **Neither Looking Nor Listening.** Although the street
car that struck plaintiff's husband may have been run at a neg-
ligent rate of speed and no bell or gong may have been
sounded, yet if, when he got off of the car on which he was rid-
ing and passed behind it, in pursuance of a purpose to cross
the other track on which cars were moving in the opposite di-
rection, he could easily have seen the nearby car coming on
the track which he wished to cross had he only looked, and by
stopping in the place of safety four or more feet wide between
the tracks avoided the accident, but did not look or listen, but
read a newspaper, and while doing so stepped in front of the
car and was killed, he was guilty of such contributory negli-
gence as bars his widow's right to recover.

Appeal from St. Louis City Circuit Court.—*Hon. H. D.
Wood*, Judge.

REVERSED.

*Morton Jourdan, George W. Easley* and *Boyle,
Priest & Lehmann* for appellant.

The court erred in refusing the instruction in the
nature of a demurrer to the evidence, offered by the de-

fendant at the close of the plaintiff's case, and renewed at the close of all the evidence in the case. The plaintiff's husband was a man of mature years, in full possession of all his mental and physical faculties, well acquainted with the manner of operating cars at the place of the accident. He went upon or so near the east-bound track as to come in collision with the car, without having looked or listened for the approaching car, when had he done so he might have seen and heard the approaching car, and avoided the collision. He passed immediately to the rear of the car upon which he had been carried as a passenger, and went on to the east-bound track, without having taken any precaution whatever to ascertain whether a car was approaching or not. This was such contributory negligence as to defeat the plaintiff's recovery. Giardina v. Railroad, 185 Mo. 330; Meyer v. Railroad, 6 Mo. App. 31; Dunn v. Railroad, 21 Mo. App. 188; Weber v. Railroad, 100 Mo. 204; Asphalt Co. v. Railroad, 102 Mo. App. 476; Buzby v. Railroad, 129 Pa. St. 539; Smith v. Railroad, 29 Ore. 539; Craemer v. Railroad, 126 Mass. 320; Chattanooga Co. v. Body (Tenn.), 8 Am. Neg. Rep. 556; Railroad v. Helms (Md.), 1 Am. Neg. Rep. 63; Davis v. Railroad, 159 Mo. 8.

*Frank K. Ryan* and *E. P. Johnson* for respondent.

(1)   The demurrer to the evidence admitted every fact it tended to prove and every inference that might with propriety have been made from it. Montgomery v. Railroad, 181 Mo. 504; Deitring v. Railroad, 109 Mo. App. 541; Moore v. Railroad, 95 Mo. App. 735. (2)   Contributory negligence is not a defense unless it is the proximate cause of or directly contributes to the injury. Rapp v. Railroad, 88 S. W. 869; Hutchinson v. Railroad, 88 Mo. App. 383; Morgan v. Railroad, 159 Mo. 273; Klockenbrink v. Railroad, 172 Mo. 688; Schlereth v. Railroad, 115 Mo. 96. (3)   Deceased was a passen-

ger on a west-bound car on the north side of Finney avenue, and it stopped a few feet west of the west crossing of Whittier street, a blind street that did not go through on the north. He had been reading a paper and alighted from the car and stood still for a short time near the curb on the north side of Finney avenue, and as the car from which he had alighted started on west, he started around or behind it and walked diagonally across Finney avenue, between it and the one that had followed it, in a southeasterly direction, looking at and reading his paper, without stopping or looking, apparently unconscious of his surroundings, until he got to the north rail of the east-bound track (or possibly a step over said rail), which is on the south side of Finney avenue, when some one seemed to halloo and he looked up, saw the first of the east-bound cars approaching and within about four feet of him, dropped his paper, seemed dazed and suddenly, almost instantly, jerked and jumped back, but he was not quick enough, and the northeast corner of said first east-bound car struck him and crushed his head. He was struck three or four feet west of the west crossing of Whittier, and the car dragged him to a little west of the center of it, which is about forty feet wide between the curbs, and it ran on until its back platform was about a car length, thirty feet, east of the east crossing of Whittier before it was stopped—a distance of four feet to the west crossing, forty feet of Whittier between its curbs, twenty feet of two sidewalks and thirty feet, a car length, east of the east crossing—a total of ninety-four feet from the place where he was struck. When he first got in sight of the car that struck him, it was forty to fifty feet west of him; when he reached the middle of the west-bound track, it was forty to forty-five feet west of where he was struck; when he got across the south rail of the latter track, it was about twenty-five to thirty feet distant, and when he reached the north rail or

stepped over it, of the east-bound track, where he jump-
ed back, it was about four feet west of him. Finney
avenue is wider than Whittier street, and he walked
from near the curb on the north side of Finney avenue
to the point where he was struck, and he could have
seen the car (and, of course the motorman might have
seen him), during the whole time he was approaching
the latter track, as testified to by appellant's witness,
Dr. Scarborough. The car that struck him was run-
ning very fast, at the rate of twenty-five miles an hour,
on a down grade from Taylor avenue, which is three
blocks away, and where a car, if started, would run by
itself, with the power off, and its gong was not sounded,
but the gongs of other cars were sounded. There is a
conflict in the evidence as to the speed of this car, rang-
ing from six to twenty-five miles an hour, and also a
conflict in regard to whether its gong was sounded. Un-
der these facts the negligence of deceased was not the
proximate cause of his injury, nor did it contribute di-
rectly thereto, which distinguishes it from the cases re-
lied on by appellant, and shows that the motorman of
the car that struck him either saw him, or by the exer-
cise of ordinary care might have seen him and become
aware of the danger to which he was exposed in time to
have stopped his car and prevented the injury of de-
ceased, and the demurrer to the evidence was properly
overruled. Bunyan v. Railroad, 127 Mo. 18; Baird v.
Railroad, 146 Mo. 269; Werner v. Railroad, 81 Mo.
369; Holden v. Railroad, 177 Mo. 463; Baxter v. Rail-
road, 103 Mo. App. 606; Aldrich v. Railroad, 101 Mo.
App. 88; Morgan v. Railroad, 159 Mo. 274; Klocken-
brink v. Railroad, 172 Mo. 686; Jett v. Railroad, 178
Mo. 673; Scullin v. Railroad, 184 Mo. 707; Rapp v. Rail-
road, 88 S. W. 869; Deitring v. Railroad, 109 Mo. App.
540; Meyers v. Railroad, 99 Mo. App. 371; Riska v.
Railroad, 180 Mo. 191.

MARSHALL, J.—This is an action, under the statute, to recover $5,000 for the death of the plaintiff's husband, on the 20th of May, 1901, occasioned, it is alleged, by the negligent running of the defendant's car, at the intersection of Finney avenue and Whittier street, in the city of St. Louis. There was a verdict and judgment for the plaintiff for $5,000, and the defendant appealed.

THE ISSUES.

The petition is very voluminous, but the gist of the negligence charged is, that the agents of the defendant failed to stop the car in time to avoid the injury to the deceased, after the danger was known to them, or by the exercise of ordinary care could have been known to them; that the car was running at a dangerous rate of speed, and the operatives were not keeping a vigilant watch for persons approaching, or moving on, the tracks; that the deceased was a passenger on one of defendant's west-bound cars, and left the car at Whittier street, and was struck by an east-bound car when attempting to cross the south track on Finney avenue, and that the operatives of the east-bound car negligently failed to sound the gong, or turn off the current of electricity and slow up the car when passing the west-bound car.

The petition further alleges that a prior action for the same purpose was instituted on the 17th of July, 1901, and that the plaintiff suffered a nonsuit therein on the 15th of July, 1902, which allegation is intended to bring this action within the provisions of the statute in such cases.

The answer is a general denial, coupled with a plea of contributory negligence of the deceased, in that he stepped in front of defendant's car in such close proximity to it as to make it impossible to prevent the accident, and without looking or listening for the approach of the car.

The reply is a general denial.

The case made is this:

The defendant has a double-track street railway on Finney avenue. The tracks are four or five feet apart. Whittier street does not extend northwardly beyond Finney avenue. The accident occurred a little after six o'clock in the evening. The deceased was a passenger on a west-bound car. When the car reached a point near Whittier street, there were three cars going west on the north track, and five cars going east on the south track. The deceased was riding on the second of the three cars going west. He was struck by the first of the five cars going east. The car on which the deceased was a passenger stopped a few feet west of the west line of Whittier street. He alighted from the car, passed around the rear, across the north track, and walked diagonally in a southeasterly direction across Whittier street. He did not stop or look or listen for a car approaching on the south track, but proceeded southeasterly, and was reading a paper as he walked. He had only gone a few feet east of the west line of Whittier street, and had about reached the north rail of the south track, when he was struck by a car coming eastwardly, and injured so that he died as the result thereof.

The track west of Whittier is straight for three blocks westwardly to Taylor avenue, and a person standing in the four or five foot space between the two tracks, could see a car for that distance westwardly. The grade is a slight down grade from Taylor avenue to Whittier street. After the accident, the car that struck the deceased stopped with its rear platform at the east side of Whittier street.

With respect to the speed of the car that struck the deceased, the plaintiff's case rests upon the testimony of three witnesses, to-wit, Thomas Furlong, Louis Robbin and Delina Roberts. Furlong was a passenger with the deceased on the west-bound car, and was seated on

the south side thereof, about the middle of the car, read-
ing a paper. He testified that he did not know how fast
the east-bound car was running, but was of opinion that
it was running fast. Robbin was a passenger on the
west-bound car, immediately behind the car on which
the deceased was riding. When the car on which Rob-
bin was riding reached the east side of Whittier street,
it stopped to permit the car on which the deceased was
riding to discharge passengers at the west side of Whit-
tier street, and Robbin arose and looked out of the front
door, and saw the deceased crossing the north track, and
at the same time he saw an east-bound car coming on
the south track. He testified that the deceased was
walking in a southeastwardly direction, and that there
was nothing to prevent his seeing the east-bound car,
on the south track, if he had looked; that at the time he
saw the deceased so walking, the east-bound car was
twenty-five or thirty feet west of the west crossing. He
did not testify as to the speed of the east-bound car.

Mrs. Roberts was an eyewitness to the accident.
She was standing at the southeast corner of Whittier
street and Finney avenue. She testified that the de-
ceased stepped off of the car about ten feet west of the
west crossing of Whittier street, and walked diagonal-
ly southeastwardly; that the east-bound car was run-
ning very fast, and that just as the deceased reached
the north rail of the south track, the east-bound car was
twenty or twenty-five feet from him; that the deceased
did not notice the car until just before it struck him,
which it did at a point three or four feet east of the west
crossing, and about fifteen feet east of the point at
which the deceased had alighted from the car; that she
came of a family of railroad conductors and had a
brother who was a passenger conductor at the time, and
that she had frequently observed the speed of cars, and
in her opinion the east-bound car was traveling at not
less than twenty-five miles an hour. She further tes-
tified that the deceased neither looked to the right nor

left nor back of him, but seemed to be looking straight ahead across the track in a little southeasterly direction; that the deceased never looked to the west until he jumped back, when the car was right upon him; that there was no obstruction on the track at any time, to prevent the deceased from seeing the east-bound car, all the way up to Taylor avenue, a distance of three blocks.

The defendant called six witnesses, who testified with respect to the speed of the car. W. C. Scarborough, a passsenger on the west-bound car from which the deceased alighted, was standing on the back platform, looking eastwardly, and was within eight feet from where the deceased crossed the west-bound track. He testified that the deceased had gotten a step or two into the middle of the east-bound track, when he looked up and saw the east-bound car about eight feet from him; that he stepped or jumped back, but the car struck him and injured him. After qualifying as an expert witness, by testifying that he had been an inspector of street railways, he stated that the east-bound car was not going at a greater rate of speed than eight or ten miles an hour, at the fastest; that the deceased did not look in the direction from which the car was coming, but looked straight ahead, and paid no attention to anything else, and never stopped until he got on to the east-bound track; that the space between the two tracks is four or five feet.

Mrs. F. A. Ball was seated in her carriage on Whittier street about twenty-five or thirty feet south of Finney avenue. She testified that the deceased never stopped until just before the car struck him; that the car was running very slowly.

A. J. Riddle was in the carriage with Mrs. Ball, and testified that the car was not running faster than usual, and seemed to be slowing down for the east crossing of the street.

Howard Campbell, the motorman, testified that the car was running six or eight miles an hour, and that

he did not see the deceased until the car was within eight feet of him, and that he then used every possible means to stop the car.

James Griffin was walking north on Whittier street and was within forty or fifty feet of Finney avenue. He said the car was not going over eight miles an hour.

H. E. Croft was a passenger on the car from which the deceased had alighted; he was standing on the rear platform facing rather to the southeast. He testified that the east-bound car was not running faster than five or six miles an hour. He further testified that the deceased stood opposite him on the platform while going westwardly, and that he had on glasses, and while the deceased was crossing the street "he held the paper right up to his face, the same as anyone would to read a paper."

With respect to the sounding of the bell, the plaintiff's case rests upon the testimony of the three witnesses aforesaid. Furlong testified that he was reading a paper, and paid no particular attention, but that he heard no bell or gong sounded upon the east-bound car. Robbin testified that the bell on the east-bound car "was ringing." Mrs. Roberts testified that the gong on the east-bound car was not rung, but said that the car made a noise, which she heard while standing on the farther side of the street.

On the other hand, the defendant's witnesses, Riddle, Campbell, Griffin and Croft, testified that the gong on the east-bound car was rung. The defendant also introduced the city ordinance which authorized the defendant to run its cars, at the point where the accident occurred, at a speed of fifteen miles an hour.

At the close of the plaintiff's case, and again at the close of the whole case, the defendant demurred to the evidence. The court overruled the demurrers and the defendant excepted.

In the view hereafter taken it is not necessary to refer to the instructions given for the plaintiff, further

than to say that the case was put to the jury, principally, upon the humanitarian doctrine.

## I.

The first error assigned is the refusal of the court to sustain the demurrers to the evidence.

At the outset it is proper to say that there is no room for the application of the humanitarian doctrine to this case. There is no evidence of any willfulness or wantonness on the part of the operatives of the car, that caused the injury to the deceased. [Zumault v. Railroads, 175 Mo. 288; Moore v. Railroad, 176 Mo. 528; McGauley v. Railroad, 179 Mo. l. c. 592.] The case is, therefore, determinable upon the principles of negligence of the defendant, if any, and contributory negligence of the deceased, if any.

The negligence of the defendant is said to consist in running the east-bound car at a dangerous rate of speed under the circumstances, and of a failure to ring the bell when approaching or passing the west-bound car.

As to the rate of speed, only two witnesses for the plaintiff testified. Furlong said he did not know how fast the east-bound car was running, but was of the opinion that it was running fast. Mrs. Roberts testified that the car was running very fast, and upon testifying that she came of a family of railroad conductors, and had a brother who was a passenger conductor, and that she had frequently observed the running of cars, she was permitted to express an opinion that the east-bound car was running at a rate of not less than twenty-five miles an hour.

On the other hand, six witnesses for the defendant testified that the car was running from five to ten miles an hour, according to the various estimates of the witnesses. The testimony of Furlong is so indefinite as not to carry with it any great weight or force, and cannot properly be considered as sustaining the allegations of

the petition that the car was being run at a dangerous rate of speed. This leaves only the testimony of Mrs. Roberts, who said the car was traveling at not less than twenty-five miles an hour. A car traveling at that rate would go thirty-six and two-thirds feet a second. Mrs. Roberts testified that when the deceased reached the north rail of the east-bound track, the car on that track was twenty or twenty-five feet away from him. The car, therefore, traveling at the rate of twenty-five miles an hour, or thirty-six and two-thirds feet a second, would reach the point, at which the deceased was, within one second, or, more accurately, three-fourths of a second, from the time the deceased stepped on the track, or in such close proximity to it as to be struck by the car.

The plaintiff introduced testimony showing that the car stopped at the east crossing of the street, and that the street was forty or fifty feet wide, and that the deceased was struck at a point three or four feet east of the west side of Whittier street. The plaintiff further introduced evidence tending to show that a car moving at the rate of four miles an hour could be stopped in from six to ten feet; at six miles an hour, in eight to twelve feet; at eight miles an hour, from ten to fourteen feet; and at twelve miles an hour, from thirty-five to forty feet. The witness giving this testimony refused to express any opinion as to the space in which a car running at fifteen miles an hour could be stopped.

The plaintiff's case, therefore, showed that the estimate given by Mrs. Roberts, of twenty-five miles an hour, was a mistaken estimate, according to the plaintiff's expert witness's opinion, for the car was actually stopped in from thirty-five to forty feet, which was the distance in which the expert said a car could be stopped running at twelve miles an hour. And this is manifestly so, for it needs no expert testimony to show that a car traveling at the rate of thirty-six and two-thirds feet a second, could not be stopped in a second, and the

car that caused the accident did not run materially further than the distance it was covering per second. There is, therefore, no substantial evidence in this case, that the car was being run at a speed of twenty-five miles an hour. The car was entitled by ordinance to run at a speed of fifteen miles an hour, and the great weight, if not the entire testimony in the case, very clearly shows that it was not exceeding the authorized speed at the time of the accident.

With respect to the ringing of the bell, Furlong testified that he heard no bell rung, but he paid no attention to it as he was reading a paper. Mrs. Roberts testified that no bell was run. Robbin, the other witness for the plaintiff, testified that the bell was rung at the time. Six witnesses for the defendant testified that the bell was being rung just before and at the time of the accident. There is no conflict in the evidence that when the deceased got off of the car, at or near the west side of Whittier street, he crossed the west-bound track, going in a southeasterly direction, and also crossed the space of four or five feet between the west-bound and the east-bound tracks, and had actually reached the east-bound track, or was about on it, when he was struck. He never stopped, looked or listened for an approaching car from the west, but was looking towards the southeast, and reading his paper, as he walked. When he crossed the west-bound track, behind the car on which he had been riding, and reached the space between the tracks, he could have looked westwardly, and have seen a car for three blocks. In fact, at that time, the west-bound car was from eight to twenty feet from him, according to the testimony of the various witnesses. He did not do so. For the purposes of this case, therefore, if it be conceded that the operative of the car was negligent in not sounding the bell, or in running at a high rate of speed, so that he could not stop the car after the deceased came in sight, from behind the west-bound car, the fact still remains that the

deceased was guilty of contributory negligence in not looking towards the west for an approaching car before attempting to cross the track, and that if he had so looked, he would necessarily have seen the car and could have stopped in a place of safety, and thereby have avoided the accident.

In principle there is no difference between the case at bar and the cases of Giardina v. Railroad, 185 Mo. 330 and Green v. Railroad, 192 Mo. 131. The facts in those cases were very similar to the facts in the case at bar. In both of them, the injured party could, by the exercise of any degree of care, have seen the approaching car in time to have avoided the accident. The Giardina case was like this case, in that, the injured party crossed the track behind a car going in one direction, and did not notice the approach of another car on the other track coming from an opposite direction, when he might have done so. In that case, as in the Green case, a recovery was denied on the ground that, even conceding that the defendant had been guilty of negligence, the case made showed that the plaintiff had also been guilty of such contributory negligence as barred a recovery. Those cases are decisive of this case, and a like result must follow in this case. It is true that greater care is required in the operation of street cars at intersecting streets, where passengers are usually discharged, and where cars meet and pass each other, than at other points between intersecting streets. It is likewise true, that persons crossing railroad tracks at such points, or at any point, must exercise ordinary care to prevent accidents, for especially in large cities, where street cars run at short intervals, the law charges every one with notice of the fact that a car may pass any given point at any minute, and, therefore, casts the duty upon persons crossing the tracks to exercise ordinary care not to go on or over or so near a track as to be injured by a passing train. The unfortunate accident in this case would easily have been avoided if the

deceased had taken the slightest care to prevent it. Instead of doing so he walked onto the track, or so close to it as to be injured, without looking for an approaching car, but with his eyes fixed in an opposite direction, and as some of the witnesses say, reading his paper while he walked.

The conclusion is irresistible, that the deceased was guilty of contributory negligence which cuts off a recovery, even though the defendant could properly, under the evidence in the case, be said to have been guity of negligence, for there is no evidence whatever of any recklessness or wantonness in the case. It follows that the judgment of the circuit court must be reversed.

*Valliant, J.,* concurs; *Lamm, J.,* concurs in the result; *Brace, P. J.,* absent.