HATTIE W. REYNOLDS, EXECUTRIX, APPELLANT, v. OMAHA
& COUNCIL BLUFFS STREET RAILWAY COMPANY,
APPELLEE.

FILED MARCH 1, 1922.   No. 21621.

1. **Street Railways:** CONTRIBUTORY NEGLIGENCE: QUESTION OF FACT. Whether the failure of a party injured to look and listen before undertaking to pass in front of an electric street railway car constitutes negligence is a question of fact.

2. Instruction No. 9, set out in the opinion, approved.

3. **Street Railways:** DUTY TO PEDESTRIAN. A motorman in charge of a street car approaching a street intersection, upon observing a pedestrian approaching the tracks, may assume that he is normal mentally, and has faculties sufficient to protect himself from injury, and will exercise ordinary care for his safety. When it is apparent that such pedestrian is heedless of his surroundings, and about to place himself in peril, the motorman must use every means that ordinary care and prudence require to avert injury.

4. ———: NEGLIGENT SPEED: QUESTION FOR JURY. The excessive speed of a street railway car is a fact from which negligence may be inferred, and whether such speed in a particular case constitutes negligence is a question for the jury.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*Lambert, Shotwell & Shotwell* and *William C. Dorsey,* for appellant.

*John L. Webster,* contra.

Heard before MORRISSEY, C.J., ROSE, ALDRICH and FLANSBURG, JJ., GRAVES and WELCH, District Judges.

GRAVES, District Judge.

Appellant, as executrix of the estate of Halsey W.

Reynolds, deceased, brings this action against the appellee to recover damages resulting from a collision, causing the death of her husband, Halsey W..Reynolds, with a north-bound street car of the appellee at the intersection of Mary street with Thirtieth street in the city of Omaha, which accident occurred at about 9:30 o'clock a. m., on the 5th day of May, 1919. The case was tried to a jury, resulting in a verdict for the defendant, and the case is here on appeal.

The charge of negligence made by the plaintiff in her petition against the defendant, is excessive speed of the street car, failure to sound the gong, and failure of the motorman to keep a vigilant lookout at a street intersection. The answer of the defendant specifically and generally denies the allegations of negligence, and charges the deceased, Halsey W. Reynolds, with contributory negligence in stepping upon the street car tracks before a moving car without looking, and heedless of the danger signals.

At the time in question the appellee owned and operated a double-track electric street railway on Thirtieth street, running north and south, the west track being the south-bound and the east track being the north-bound track. Mary street intersects Thirtieth street from the east, the west end thereof terminating at the west curb line of Thirtieth street. On the west side of Thirtieth street and the west terminal of Mary street, and about opposite the south curb line of Mary street, is a grocery store and to the north thereof is a drug store. At this point Thirtieth street is 40 feet and Mary street 22 feet wide from curb to curb, and 13 feet from the east or west curb line of Thirtieth street to the car tracks, each track being 4 feet 8½ inches wide, and the distance between the north and south-bound tracks being 4 feet 9½ inches.

At the time of the accident, deceased, a deaf man, about 66 years of age, a carpenter and contractor by trade, and a resident of Omaha for more than ten years,

after purchasing some tobacco at a grocery store, walked out of the east door thereof across the sidewalk in an easterly direction to the west curb line of Thirtieth street, and at a point nearly opposite the south curb or crosswalk of Mary street. At this point, and in front of these stores, along the west curb of Thirtieth street and parallel with the curb, stood two automobiles parked about 18 feet apart. Deceased passed between these automobiles and stopped at the outer or eastern side thereof in the street as a south-bound automobile passed him, and paused until said automobile moved south to a point about 150 feet, where it passed a north-bound street car. Deceased then moved eastward or north-eastward, at an ordinary walk, across the west track of appellee, without looking to the north or south. The street car slowed down to almost a stop at Newport avenue, one block south of the place of the accident, and sounded the gong for a passing automobile, after which it picked up speed. On board the car, beside the motorman and conductor, were two passengers, a postman and a locomotive fireman. When within 40 or 50 feet of the intersection of Mary street the gong sounded, and when within 30 or 40 feet of the point of the accident, going at 10 or 12 miles an hour, the gong sounded vigorously and the air brakes were applied, and when at the south curb of Mary street, with the car moving about 8 miles an hour, the motorman applied the emergency and did everything in his power to stop the car. This, in substance, is the testimony of appellee's employees and the two passengers.

As to the rate of speed and the sounding of the gong, there is a sharp conflict in the evidence. Appellant's witnesses fixed the rate of speed of the car at from 10 to 35 miles an hour, and they heard no warning, and one or two witnesses claimed the motorman was looking down at his feet and did not keep a lookout.

C. V. Hertel, the motorman, testified, in substance: Q. Now, when he (Reynolds) stepped from between those

two machines about where was your car, with reference to the south curb line of Mary street? A. About 40 or 50 feet south. Q. What did you do when you saw him start to walk toward the south-bound track? A. I rang the gong, as we do to warn people, and threw off the power. Q. When you first noticed him how many times did you tap the gong? A. Well, I don't know exactly. I did not count the times. Q. Approximately, the first tap? A. A couple of times. Q. The street car then continued on its way for some distance? A. Yes, sir. Q. What did Mr. Reynolds do? A. Kept on walking. Q. After he continued walking, what did you then do? A. I put on the air and kept on ringing the gong. Q. About where was your car when you threw the air on? A. Well, about 15 or 20 feet south of the south curb of Mary street. Q. Did Mr. Reynolds then do anything with reference to looking at something in his hand? A. It looks like he was looking after something in his hands—that he was kind of working with it. Q. What did you do when you saw that he continued to walk toward your track without looking toward you? A. I put the air on full force. I put the emergency on. Q. Where were you when you slammed the emergency on? A. Just about south of the sidewalk on the south side of Mary street. Q. Now, after that what did you do with reference to operating your car? A. Well, I saw he got close to the track and I kept on ringing the gong, and I saw he did not notice me, and I put on the reverse. Q. How did you do that? A. I pulled the lever brake and threw the air off and put two points on. Q. Where was Mr. Reynolds in the street at the time you put on your reverse with reference to the south-bound track? A. He was about in close to the east rail. Q. Had he stepped over the east rail or was he between the two rails of the south-bound track? A. He was in between the two rails of the south-bound track. Q. He was just walking toward your track? A. Yes sir. Q. What was he doing? Where was he looking? A. He was looking

kind of downward at something in his hands. Q. At that time, you say, when he reached the east rail of your south-bound track, you threw your car into reverse? A. Yes, sir. Q. Up to that time did you think he was going to step toward and across your track? A. No. Q. Did you know that he was deaf? A. No. Q. Had you ever seen him before? A. Not that I know of. Q. Did you assume when you first rang the gong for him, and up until the time you reversed your car, that he was going to stop? A. I thought that he would. Q. Where was the front end of your car when you reversed it? A. At the south curb line of Mary street. Q. Tell the jury how he hit the car, what part of the car he hit, and what happened. A. He and the front corner of the car got together just a little north of the center of the street. Q. In that connection in which direction was he walking as he continued across the street while you were observing him? A. East and a little bit to the north."

Deceased, when struck by the car, was thrown through the air nine or ten feet, and from where he landed on the pavement he slid a distance of about eight or ten feet north and west, to a point between the south-bound tracks, and opposite the north property line of Mary street. The car, when brought to a stop, stood with its rear end opposite the body. Deceased died from the injuries received in a few hours. Thirtieth street is paved, practically level for several blocks, with an elevation to the north of 6/10 of 1 per cent.

Tests were made with the car driven on that occasion, to demonstrate that the same could not attain on Thirtieth street a speed in excess of 18 miles an hour. At the time of the accident the day was bright and clear, and there was nothing in the street or the intersection of Mary street to impair the view of deceased.

The testimony is convincing that deceased walked into danger without looking. And the record discloses no excuse or reason for his failure to use his vision, when,

had he looked, he could not fail to see the car and avoid the accident. He closed the only avenue of warning that nature left him.

The appellant complains of instruction No. 9, given by the court on its own motion, which instruction is as follows:

"You are instructed that a street railway company and an ordinary pedestrian have equal and reciprocal rights of travel at the intersection of streets in the city, but each must observe due care to avoid accidents, taking into account the fact that the street car is confined to the track, while the pedestrian has freedom of movement. The pedestrian should look before he attempts to cross a street railway track in order to see and avoid danger. The fact that the decedent was deaf made it incumbent upon him to be more alert in the use of his sight to protect himself from harm. In respect to these reciprocal rights and duties of the parties you are instructed that it was equally the duty of Halsey W. Reynolds to look for an approaching car and of the motorman to keep a lookout ahead of the car for a pedestrian who might be crossing the intersection."

Considering this instruction together with the other instructions given, we do not deem it reversible error.

"A street car has the right of way in case of meeting a person or vehicle, but each party, in order to avoid accident, must exercise ordinary care, and such reasonable prudence as the surrounding circumstances may require." *Hall v. Ogden City R. Co.,* 13 Utah, 243, 57 Am. St. Rep. 726.

According to the rule prevailing in this state, whether under the circumstances it is the duty of a person to look and listen for an approaching car is a question of fact and not of law, and a pedestrian's failure to look and listen before crossing a street railway track is not ordinarily negligence *per se.* If, however, the failure to look or listen in a particular case is such palpable negligence as to leave no room for a reasonable difference

of opinion, it may become negligence as a matter of law. 25 R. L. C. 1278, sec. 131.

The appellant contends that the trial court erred in not giving instructions requested by appellant on the doctrine of the last clear chance. We do not think that doctrine applicable to this case. In the case at bar the facts are not sufficient to invoke that doctrine. There was no time that deceased in crossing the street could not have avoided the injury to himself by merely looking for an approaching car, and we think that it cannot be said that deceased was discovered by the motorman to be in a state of peril at any point of time before the motorman used his utmost endeavor to stop the car. *Hooker v. Wabash R. Co.*, 99 Neb. 13; *Deane v. St. Louis Transit Co.*, 192 Mo. 575. There is no evidence whatever of any recklessness or wantonness on the part of the operators of the street car.

We are satisfied that the judgment of the lower court is right, and it is

AFFIRMED.